IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 4470 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ILLINOIS STATE TOLL | ) | |
| HIGHWAY AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frank Gonzalez has filed a four-count amended complaint against his former employer, the Illinois State Toll Highway Authority (the "Tollway"), alleging employment discrimination and violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12111 *et seq.*,[1] and the Illinois Public Works Employment Discrimination Act, 775 ILCS § 10 *et seq*. Count I, alleging discharge on the basis of disability, was brought under § 12112(a) of the ADA. Count II, alleging failure to provide reasonable accommodations of disability, and Count III, alleging participation in a contractual or other relationship that has the effect of discrimination on the basis of disability, were brought under § 12112(b) of the ADA. Defendant has filed a motion for summary judgment on all counts.[2] For the reasons discussed below, the motion for summary judgment is denied.

---

[1] The ADA is actually at 42 U.S.C. § 12101 *et seq*.

[2] In his response to defendant's motion, plaintiff agreed that the Illinois Public Works Employment Discrimination Act does not apply and Count IV should be dismissed.

**FACTS**

In considering a motion for summary judgment, the court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." Harney v. Speedway SuperAmerica, LLC, 526 F.3d 1099, 1104 (7th Cir. 2008). The following facts are taken from the complaint and from the parties' statements of facts and accompanying exhibits as to which there is no material dispute.

Plaintiff was a part-time Toll Collector for the Tollway, an agency of the State of Illinois, from around May 1995 through April 2006. Senior Toll Collectors have set schedules, while Toll Collectors have variable schedules. A job description states that Toll Collectors must have "[t]he ability to work seven (7) days [a] week, twenty-fours hours a day, including night[s], weekends, and holidays," and plaintiff states that he "was to be available for scheduling to fill in for a Senior Toll Collector as needed, on any shift."[3]

Defendant employed Vincent Volante as General Manager of Toll Services and Reid Mullin as Plaza Manager. Mullin was superior to Plaza Supervisors Bob Howlett and Ross Ianello, who directly supervised the Toll Collectors. Mullin, Howlett, and Ianello shared the duty of scheduling the Toll Collectors.

During the relevant period of January 2005 through April 2006, plaintiff missed work on a number of occasions for medical reasons. While working for defendant, plaintiff "suffered from lower back (lumbar) problems aggravated by stress, anxiety and severe depression, later

---

[3]Plaintiff understood a variable schedule to be part of his job. He stated that "part-timers take over for when there is a shift open [and] full-timers have a steady schedule and go home. Part-time[rs] work all different shifts."

diagnosed as bipolar disorder, and was taking prescription medications for those disabilities." Medication made plaintiff groggy and tired, and he sought morning shifts because he took medication later in the day as his symptoms worsened. Plaintiff indicated that he would be able to perform his job if scheduled for as many morning shifts as other Toll Collectors.[4]

On June 27, 2005, September 12, 2005, and January 11, 2006, plaintiff received two-, five-, and ten-day suspensions, respectively, for attendance-related violations. On April 24, 2006, Volante recommended that plaintiff be terminated for attendance-related violations. Thereafter, plaintiff was informed by letter of his suspension pending investigation for excessive absences and unavailability for scheduling. On May 16, 2006, plaintiff was informed by letter of his termination.

Although plaintiff never submitted forms to defendant to request an accommodation under the ADA, he alleges that his employment was terminated before he was able to obtain the requested reports and documentation from his physicians. Plaintiff brought doctor's notes to defendant, but did not bring reports and documentation because his "medical condition [was] nobody's business."

## DISCUSSION

**Legal Standard**

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

---

[4]Plaintiff testified at his deposition that he sought to be "treated fairly and equally" and scheduled for as many morning shifts as other Toll Collectors. He also never asked to be assigned to all morning shifts in order to be able to perform his job. Plaintiff does not allege a disparate treatment ADA claim.

Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits that demonstrate an absence of material fact. See Celotex, 477 U.S. at 323 (1986). The burden then shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

**Analysis**

Local Rule 56.1(a)(3) requires a party moving for summary judgment to serve and file with its motion "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." "Failure to submit such a statement constitutes grounds for denial of the motion." Local Rule 56.1(a).

The court notes that defendant does not include a statement of facts in its legal memoranda. As the court has previously admonished, omitting complete factual recitations in the parties' briefs constitutes an impermissible and transparent attempt to avoid the page limitations prescribed by Local Rule 7.1. Cleveland v. Prairie State College, 208 F. Supp. 2d 967, 972-73 (N.D. Ill. 2002). Defendant's failure to fulfill its obligations places a burden on the court and would alone justify denying its motion for summary judgment. The court has

nevertheless reviewed the record, which reveals contested issues of material fact precluding summary judgment on the merits as well.

> Section 12112 of the ADA provides, in part:
> (a) General rule
>
> > No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
>
> (b) Construction
>
> > As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes–
> >
> > (2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);
> >
> > (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

The amended complaint alleges one violation of § 12112(a) and two violations of § 12112(b). In response to defendant's motion, however, plaintiff notes that subsection (b) defines "discriminate against a qualified individual on the basis of disability" for purposes of determining claims under subsection (a). He further clarifies that "only Counts I and II are necessary and are being pursued...however, logically and legally, Plaintiff has only one ADA claim. He was discharged on account of his non-accommodated disability." Consequently, plaintiff alleges that defendant violated § 12112(a) of the ADA by "not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" as set forth in § 12112(b)(5)(A). Only Count I, alleging violation of subsection (a) by way of subsection (b)(5)(A), remains.

To establish a claim for failure to accommodate, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) his employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005). As a preliminary matter, a plaintiff must demonstrate that he has a disability. The ADA defines disability as: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

An impairment is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss...or [a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h). Under this definition, plaintiff's anxiety, depression, and bipolar diagnosis certainly qualify as mental or psychological disorders, specifically emotional or mental illnesses.[5]

Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). In his answer to interrogatories, plaintiff states that he can no longer work on cars, take his children to parks, picnics, and playgrounds, or go out with friends and family.

---

[5]For present purposes, the court disregards arguments that plaintiff's mental or psychological disorder was not well-documented because plaintiff alleges that he was terminated before he could obtain the requested reports.

6

Defendant argues that none of these activities are included in or similar to the statutory definition of major life activities. Plaintiff also states, however, that his disability prevented him from performing and engaging in activities outside his "areas of comfort," such as his home. Reading the facts in the light most favorable to plaintiff, the court finds that his claim reasonably includes working.

The term "substantially limits" means: (1) "[u]nable to perform a major life activity that the average person in the general population can perform;" or (2) "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). To establish that he is substantially limited in the major life activity of working, plaintiff must show that he is unable to work in "either a class of jobs or a broad range of jobs in various classes...The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I); Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999);[6] Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 506

---

[6]In 2008, Congress overturned the Supreme Court's decisions in Sutton (holding that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures) and Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) (holding that the terms "substantially" and "major" in the definition of disability under the ADA "need to be interpreted strictly to create a demanding standard for qualifying as disabled," and that to be substantially limited in performing a major life activity under the ADA, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives"). In the instant case, however, the relevant period is from 2005 to 2006. The ADA Amendments of 2008 were not effective until January 1, 2009, and the Seventh Circuit has found that they are not retroactive. See, e.g., Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits, 601 F.3d 674, 679 (7th Cir. 2010); Fredricksen v.
(continued...)

(7th Cir. 1998); Skorup v. Modern Door Corp., 153 F.3d 512, 514 (7th Cir.1998) (finding that the inability to perform a particular job for a particular employer is not a substantial limitation on working).

In the instant case, plaintiff has demonstrated a disputed issue of whether he is substantially limited in the major life activity of working. Plaintiff has offered evidence to show that he is incapable of performing duties associated with a class or broad range of jobs, specifically jobs excluding morning shifts that would prevent him from taking medication. Plaintiff indicated that he would be able to perform his job if scheduled for as many morning shifts as other Toll Collectors and, as discussed below, that assigning him to fewer than normal morning shifts failed to accommodate his disability.

A qualified individual with a disability is "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The employee must be "otherwise qualified" for his position. Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 862 (7th Cir.2005). Accordingly, the court engages in a two-part inquiry to determine if the employee: "(1) satisfies the requisite skill, experience, education, and other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation." Budde v. Kane County Forest Pres., 597 F.3d 860, 862 (7th Cir. 2010) (citation omitted). The employee bears the burden of proof in establishing that he was capable of performing the essential functions of the

---

[6](...continued)
United Parcel Service, Co., 581 F.3d 516, 521 (7th Cir. 2009). In any event, this court finds that plaintiff is under the protection of the ADA.

position or that reasonable accommodations could or should have been fashioned that would have allowed him to perform the essential functions of the position. Hammel, 407 F.3d at 863.

The parties do not dispute the first prong, that plaintiff "satisfie[d] the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Basith v. Cook County, 241 F.3d 919, 927 (7th Cir. 2001) (citing Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996). Moreover, although plaintiff's attendance from 2005 to the date of his termination was marred, his employment with defendant for over 10 years indicates that he satisfied the prerequisites for the Toll Collector position.

The parties dispute the second prong, that plaintiff performed the essential functions of the position. The ADA defines the term "essential functions" to mean "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). In determining what are the essential functions of a position, a court may consider "evidence of the employer's judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job and the work experience of current incumbents in similar jobs." Basith, 241 F.3d at 927 (citing 29 C.F.R. § 1630.2(n)(3)). "[W]ritten job descriptions are clearly instances of the employer's judgments as to which functions are essential." Id. at 928.

In the instant case, defendant's job description states that Toll Collectors must have "[t]he ability to work seven (7) days [a] week, twenty-fours hours a day, including night[s], weekends, and holidays," and the evidence shows that plaintiff understood this. Nevertheless, although plaintiff will face a difficult burden at trial, the court finds that genuine issues of

material fact exist as to whether working morning shifts was an essential function of the job. Although attendance is an essential function of almost any position, Waggoner v. Olin Corp., 169 F.3d 481, 484 (7th Cir. 1999), working a particular shift may not be.

In Waggoner, upon which defendant relies, the court found that the plaintiff-employee "thinks that rather than ensuring that she be allowed to work, the ADA requires [the employer] to provide her with a job but not require that she regularly perform it." Id. In the instant case, plaintiff does not expect defendant to provide him with a job that does not require regular performance or "hire another employee to do the job for [him] while [he] remains a full-time employee." Id. Plaintiff sought morning shifts, which he argues would allow him to regularly perform his job. Plaintiff was one of many Toll Collectors working for defendant; presumably, it was not essential for plaintiff to work evening or night shifts to the extent that it interfered with his medication and his ability to work.

Moreover, the court finds that genuine issues of material fact exist as to whether defendant was aware of plaintiff's disability and whether defendant failed to reasonably accommodate the disability, both elements of his claim for failure to accommodate. Sears, 417 F.3d at 797. Under the ADA (and therefore the Rehabilitation Act), "an employer must make 'reasonable accommodations' to a disabled employee's limitations, unless the employer can demonstrate that to do so would impose an 'undue hardship.'" 42 U.S.C. § 12112(b)(5)(A); Sears, 417 F.3d at 802. Federal law requires the employer and employee to engage in an interactive process to determine the appropriate accommodation. Id. at 797. If an employee shows that she was not reasonably accommodated and that the employer was the party responsible for the breakdown in the interactive process, the employer will be liable. Id.

At his deposition, Ianello stated that he did not know that plaintiff was taking medication. When asked about cooperating with plaintiff's request for morning shifts, Ianello responded that he tried "to accommodate [all collectors] when operationally feasible," and that plaintiff had medical-related excuses for his absences on a number of occasions. Although plaintiff's statements suggest that he may not have informed defendant of his disability,[7] its awareness of his disability does not depend on particular reports and documentation (as opposed to doctor's notes) or on how plaintiff informed defendant (i.e., in accordance with its standard procedure). In addition, whether defendant engaged in an interactive process to determine the appropriate accommodation and whether it was responsible for the breakdown, if any, in the interactive process are questions of fact for the jury.

## CONCLUSION

For the reasons discussed above, the motion for summary judgment is denied. This matter is set for a report on status on September 28, 2010, at 9:00 a.m.

**ENTER:** **September 14, 2010**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[7] For example, at his deposition, plaintiff stated that his "medical condition [was] nobody's business."